UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL TODD RYDER, ET AL.

CIVIL ACTION

VERSUS

NUMBER 15-431-SDD-EWD

UNION PACIFIC RAILROAD COMPANY,
ET AL.

**RULING ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF THE
LOCOMOTIVE VIDEO WITHOUT A CONFIDENTIALITY AGREEMENT OR
PROTECTIVE ORDER AND UNION PACIFIC'S MOTION FOR PROTECTIVE
ORDER REGARDING LOCOMOTIVE VIDEOS**

Before the court is Plaintiffs' Motion to Compel Production of the Locomotive Video without a Confidentiality Agreement or Protective Order (the "Motion to Compel")[1] and Union Pacific Railroad Company's and Union Pacific Corporation's (collectively, "Union Pacific") Motion for Protective Order Regarding Locomotive Videos (the "Motion for Protective Order").[2] For the reasons stated herein, Plaintiffs' Motion to Compel[3] is GRANTED and Union Pacific's Motion for Protective Order is DENIED.[4] Additionally, in light of this ruling, Plaintiffs' previous Motion to Compel filed on February 19, 2016 is DENIED AS MOOT.[5]

---

[1] R. Docs. 42 & 46.  On February 19, 2016, Plaintiffs filed a Motion to Compel.  R. Doc. 42.  Thereafter, Plaintiffs filed the same Motion to Compel in order to comply with local rules.   R. Doc. 46.  A review of Plaintiffs' second Motion to Compel shows that, other than modifying the signature block to comply with local rules, it is identical to the original Motion to Compel.

[2] R. Doc. 51.

[3] R. Doc. 46.

[4] R. Doc. 51.

[5] R. Doc. 42.

## I.      Background

This suit arises out of a February 16, 2015 collision between Plaintiffs' vehicle and Union Pacific's train (the "Collision").[6]   The lead locomotive of the train was equipped with a Track Image Recording ("TIR") device that captured real-time audio and video footage.[7]   Union Pacific contends that it has shown the video to Plaintiffs' counsel and has offered to provide a copy of same along with the software necessary to view it subject to a Confidentiality Agreement.[8]   The proposed Confidentiality Agreement[9] stipulates that videos produced from locomotives involved in the Collision "shall be used only with regard to any proceedings that may arise concerning said collision, including but not limited to the above captioned lawsuits."[10]   The proposed Agreement further stipulates that the videos shall not be reproduced, copied, disseminated or shown to any other person not involved in this litigation and, in particular, shall not be disseminated to the media, Internet, or other electronic outlet.[11]   The proposed Agreement also requires that all copies of the videos be returned to Union Pacific within 15 business days following conclusion of the suit or dismissal of all claims therein.[12]

Plaintiffs object to entry of the Confidentiality Agreement and have filed the instant Motion to Compel to require Union Pacific's production of the video without entry of a Confidentiality

---

[6] *See*, R. Doc. 1, ¶¶ 23-31 and R. Doc. 48 (Status Report).

[7] R. Doc. 50, p. 2 and R. Doc. 51, ¶ 2.

[8] R. Doc. 50, p. 2.

[9] *See*, Exhibit A attached to Plaintiffs' Motion to Compel.  R. Doc. 46-2.

[10] The proposed agreement includes a duel caption referencing this suit and *Nicholas Courteaux v. Union Pacific Railroad Company, et al.*, No. 15-cv-530-SDD-EWD, United States District Court, Middle District of Louisiana. Defendants' Motions to Dismiss were granted in the *Courteaux* suit on March 16, 2016 and Judgment was entered that same day dismissing Plaintiff's claims with prejudice.  R. Doc. 32 & 33.

[11] R. Doc. 46-2.

[12] *Id*.

Agreement or Protective Order.[13]  Union Pacific has filed an objection to the Motion to Compel[14] as well as a separate Motion for Protective Order adopting by reference its arguments in its objection to the Motion to Compel.[15]

On April 18, 2016, counsel for the parties participated in an in-court conference.[16]  During that conference, the Court considered the Motion to Compel and Motion for Protective Order. Plaintiffs' counsel asserted that Union Pacific had presented no justification for entry of a protective order and expressed: (1) his desire to share the video with colleagues/attorneys outside of those retained in this case; (2) his concern about Union Pacific's proposed requirement that the video be destroyed following this litigation; and (3) his concerns regarding witness preparation should the video be produced subject to Union Pacific's proposed protective order/confidentiality agreement.  Counsel for Union Pacific stated in response that the locomotive video is Union Pacific's property, that Union Pacific is concerned about the video being posted to the internet or social media such that it could be altered by third parties, and that Union Pacific objects to the video being used as part of a "library" of similar incidents.  At the April 18, 2016 conference, the Court found that the video is relevant and that the only remaining question was under what terms the video would be produced.[17]  The Court requested the parties attempt to reach an agreement as to production of the video and to advise the Court in the event they were unable to reach an agreement.

---

[13] R. Doc. 46.

[14] R. Doc. 50.

[15] R. Doc. 51.

[16] R. Doc. 58.

[17] R. Doc. 58, p. 2.

On April 27, 2016, via letters filed into the record, the parties informed the Court that they had been unable to reach an agreement.[18]  Based on the parties' letters, it appears that the crux of the dispute is Union Pacific's insistence that the video not be disseminated outside of this litigation and that the video be returned following the conclusion of this litigation.[19]

## II.    Analysis

### A.  Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items.  If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may

---

[18] R. Doc. 59 & 60.

[19] *See*, R. Doc. 60 ("[A] potential compromise production agreement with Plaintiffs came to an impasse on multiple grounds, the most prevalent being Plaintiffs' refusal to agree to refrain from making unauthorized copies and to return the videos at the conclusion of this litigation.").  The Court notes that in conjunction with their letter, Plaintiffs submitted a proposed protective order which they assert "is a reasonable compromise and reflects the parties concerns raised with the Court in their respective memorandums [sic] and at the April 18, 2016 hearing."  R. Doc. 59.  In response to Plaintiffs' proposed order, Union Pacific again asserts that "good cause exists for the entry of a Protective Order consistent with the Agreement that [Union Pacific] proposed from the outset."  R. Doc. 60.  The Court considers Plaintiffs' proposed "compromise" protective order to be Plaintiffs' alternative position, and their Motion to Compel production without entry of any confidentiality agreement or protective order to be their primary position.  Because the Court grants Plaintiff's Motion to Compel and denies Union Pacific's Motion for Protective Order, it is unnecessary to consider Plaintiffs' alternative position.

move to compel disclosure.   Fed. R. Civ. P. 37(a)(1) & 37(a)(3)(B)(iv).[20]   An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### B. Production of the Locomotive Video

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Harris v. Amoco Production Co.*, 768 F.2d 669, 683-84 (5th Cir. 1985). "The federal rules do not themselves limit the use of discovered documents or information. Rule 26(c) does, however, afford district courts the ability to impose limits. If the party from whom discovery is sought shows 'good cause,' the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained." *Id*. at 684.

Plaintiffs object to the proposed Confidentiality Agreement, arguing that there is nothing confidential about the video or accompanying data and that Union Pacific cannot meet its burden

---

[20] Such motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).  Plaintiffs' Motion to Compel contains the required Rule 37 Certificate.

of establishing good cause for entry of a protective order.[21] Specifically, Plaintiffs assert that there is a "presumption for public access to judicial records, such as the locomotive video"[22] and complain that "[o]nce a protective order is in place, plaintiff's counsel cannot collaborate with other attorneys with similar litigation or vet the completeness of the evidence against what others have found."[23] Plaintiffs further assert that they "should have the ability to use the information learned in this specific case in future cases"[24] and that if they "are not allowed to share the video and data with outside parties and are required to return the evidence after the lawsuit, the Plaintiffs will be denied the opportunity to brainstorm about this critical evidence with other plaintiffs."[25]

In response to Plaintiffs' Motion to Compel, and in support of its own Motion for Protective Order, Union Pacific explains that while it will "gladly produce [the video] for use in this litigation subject to an agreement that it will only be used herein, will not be broadcast over the internet or any other media outlet, and will be returned at the completion of the case,"[26] its seeks entry of a protective order "to protect its property from being used inappropriately on webpages and other outlets that thrive on the misfortune of others."[27] In support of its position, Union Pacific attaches an Order entered in *Allgier/Kirby v. Union Pacific Railroad Company*, 08-cv-226 (S.D. Ill. 2008) wherein the court granted an uncontested motion for entry of a protective order prohibiting

---

[21] R. Doc. 46-1, pp. 3 & 6-8.

[22] R. Doc. 46-1, p. 4.

[23] R. Doc. 46-1, p. 8.

[24] R. Doc. 46-1, p. 10.

[25] R. Doc. 46-1, p. 11.

[26] R. Doc. 50, pp. 2-3.  In its Motion for Protective Order, Union Pacific specifically requests that a Protective Order should be entered that declares: (1) the video shall be used only in connection with this lawsuit and shall not be broadcast to the public via the internet or any other media outlet; (2) the video shall be viewed/utilized only by the parties herein, their respective attorneys, and experts retained in this lawsuit; (3) the video shall not be reproduced; and (4) the video shall be returned to Union Pacific's attorneys within 15 days of completion of this lawsuit.  R. Doc. 51, p. 2.

[27] R. Doc. 50, p. 3.

dissemination of video depicting the train's approach.[28]  Therein, the court noted that it could not "contemplate any sound reason why Plaintiffs should be allowed to place the contents of the videotape on any electronic outlet."[29]  Union Pacific additionally argues that there is no justifiable reason for its non-public data to be broadcast publically.[30]

Plaintiffs do not dispute that they wish to disseminate the video beyond the boundaries of this particular litigation; rather, they maintain that they should have the ability to confer with other attorneys in similar cases and to potentially use the information obtained in this case in future cases.[31]  While Union Pacific asserts that it will produce the video for use in this litigation, it expresses a concern that the video will be "used inappropriately on webpages and other outlets that thrive on the misfortune of others"[32] and that its property rights in its private recordings should be given deference.[33]

---

[28] R. Doc. 50-2.

[29] R. Doc. 50-2, p. 2.

[30] R. Doc. 50, p. 3.

[31] In their Memorandum in Support of its Motion to Compel, Plaintiffs spend significant time arguing that there is a "presumption" in favor of public access to judicial documents "such as the locomotive video." R. Doc. 46-1, p. 4. However, following the 2000 amendments to Fed. R. Civ. P. 5(d), courts are not to permit filing of discovery materials until they are "used in the proceeding or the court orders filing." "This change has weakened arguments that there is a presumptive public right of access to such materials." 8A Fed. Prac. & Proc. Civ. § 2042 (3d ed.). *See also, In re Enron Corp. Securities, Derivative & ERISA Litigation*, 229 FRD 126, 128 (S.D. Tex. 2005) (agreeing that "the presumption of public access does not apply to pretrial discovery materials."); *Robroy Industries – Texas LLC v. Thomas & Betts Corp.*, 2016 WL 325174, at *2 (E.D. Tex. Jan. 27, 2016) ("materials such as discovery that is exchanged between the parties and not made part of a court filing are typically not regarded as court materials at all and are therefore not subject to the public interest in open judicial proceedings."). In granting the Motion to Compel here, the court does not rely on any presumption in favor of public access to discovery materials that have not been used in the proceedings. Instead, the court focuses on Union Pacific's burden to show "good cause" exists for entry of a protective order.

[32] R. Doc. 50, p. 3.

[33] Union Pacific does not provide any additional support for its assertion that its "property rights should be given deference" other than stating that "[t]he simple fact that a lawsuit was filed does not create a basis for otherwise non-public data to be broadcast publically." R. Doc. 50, p. 3. In its letter, Union Pacific cites to a number of cases in support of its position that use of discovery should be limited to the instant case. As discussed herein, the law of the Fifth Circuit is that absent a showing of good cause, a party generally may do what it wants with material obtained through the discovery process. *Harris v. Amoco Production Co.*, 768 F.2d 669, 683-84 (5th Cir. 1985).

Despite Union Pacific's concerns, it has not provided any "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" to support its concern that the video will be used inappropriately or voyeuristically.   *See*, *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (entry of a sequestration protective order without "particular and specific demonstration of fact" such as affidavits or other evidence showing that fact witness would be inclined to protect each other through a sense of "camaraderie" constituted a clear abuse of discretion.).   Further, Plaintiffs' description of the video (which Union Pacific does not dispute) states that the video shows the moments leading up to the collision and provides data regarding "speed, horn, bell, and emergency braking" but does not show the collision itself and "there is no horrific scene or gore or carnage."[34]   Under such circumstances, the content of video itself does not provide a basis for entry of a protective order.   *See, e.g.*, *Partin v. Wal-Mart Louisiana, LLC*, 2011 WL 441474 (W.D. La. Feb. 1, 2011) (denying appeal of Magistrate Judge's ruling granting in part and denying in part defendant's motion for protective order where protective order prevented public dissemination prior to trial of video with "graphic content" showing events leading to death of Plaintiff's mother but did not require destruction of the video footage at the conclusion of the matter).

To the extent Union Pacific is concerned about Plaintiff's use of the video in future litigation, the Court again notes that the presumption in the Fifth Circuit is that "[a] party may generally do what it wants with material obtained through the discovery process" absent a showing of "good cause." *Harris v. Amoco Production Co.*, 768 F.2d 669, 683-84 (5th Cir. 1985).   The Court does not find that Plaintiff's admitted desire to "use the information learned in this specific

---

[34] R. Doc. 46-1, p. 2.   Per Plaintiffs' description, "[t]his locomotive video shows the moments leading up to the collision and also critical data, such as speed, horn, bell, and emergency braking. However, the video does not actually depict the collision and there is no horrific scene or gore or carnage."

case in future cases," without more, is sufficient good cause for entry of a protective order prohibiting dissemination outside of this particular litigation or requiring return of the video upon conclusion of this litigation.   *Compare*, *Sanchez v. Property and Cas.*, 2010 WL 107606 at \*2 (S.D. Tex. Jan 7, 2010) (denying insurer's motion for protective order to prohibit plaintiff's counsel from using information obtained through discovery in other cases where insurer had not "articulated, or demonstrated factually, that any specific harm will flow from allowing [Plaintiff's] counsel to use these documents in other cases.") *with Pamlab, LLC v. Brookstone Pharmaceuticals, LLC*, 2010 WL 4363870, at \*4 (E.D. La. Oct. 22, 2010) (entering protective order precluding dissemination to the public of information gained through pre-trial discovery where both parties "alleged that the other party has waged a negative media campaign against it."). *See also*, *Patterson v. Ford Motor Company*, 85 FRD 152, 153-154 (W.D. Tex. 1980) (denying motion for protective order where defendant expressed concern that "counsel for the Plaintiff is interested in developing and fomenting additional litigation against Ford Motor Company" and explaining that "[s]uch collaboration among plaintiffs' attorneys would come squarely within the aims of the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action."); *Pincheira v. Allstate Ins. Co.*, 190 P.3d 322, 329 (NM 2008) ("In particular, parties may disseminate materials to litigants in other cases or to the public.") (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit.") and *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780 (1st Cir. 1988)).

Union Pacific bears the burden of establishing good cause for entry of a protective order. The video in question does not show "graphic" details, nor has Union Pacific asserted some other particularized reason for straying from the general rule of the Fifth Circuit as set forth in *Harris*.

Under such circumstances, the court finds that Union Pacific has not carried its burden of showing good cause exists for entry of a protective order.[35]

## III.    Conclusion

For the reasons stated herein, Plaintiffs' Motion to Compel[36] is GRANTED and Union Pacific's Motion for Protective Order is DENIED.[37]  Additionally, in light of this ruling, Plaintiffs' previous Motion to Compel filed on February 19, 2016 is DENIED AS MOOT.[38]

Signed in Baton Rouge, Louisiana, on May 4, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] Plaintiffs assert that "production of the video with Plaintiffs purchasing a temporary license, reimbursed by Defendant Railroad would not violate the railroad's licensing agreement.  Nor would it run afoul of Defendant Railroad's interest in maintaining confidentiality of the RailView software." R. Doc. 46-1, p. 8.  Union Pacific does not address potential issues related to licensing or maintaining confidentiality of its software in either its opposition to the Motion to Compel or its Motion for Protective Order.

[36] R. Doc. 46.

[37] R. Doc. 51.

[38] R. Doc. 42.