UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL TODD RYDER, ET AL.

VERSUS

UNION PACIFIC RAILROAD COMPANY,
ET AL.

CIVIL ACTION

NUMBER 15-431-SDD-EWD

# RULING ON UNION PACIFIC'S MOTION FOR PROTECTIVE ORDER AND TO QUASH THE VIDEO DEPOSITION OF A CORPORATE DESIGNEE REGARDING THE EFFECTIVENESS OF LIGHTS AND GATES

Before the court is Union Pacific Railroad Company and Union Pacific Corporation's (collectively, "Union Pacific's") Motion for Protective Order and to Quash the Video Deposition of a Corporate Designee regarding the Effectiveness of Lights and Gates (the "Motion").[1] For the reasons stated herein, Union Pacific's Motion is DENIED.

## I.   Background

This suit arises out of a February 16, 2015 collision between Plaintiffs' vehicle and Union Pacific's train (the "Collision").[2] The Collision occurred at a private drive crossing.[3] While Plaintiffs characterize the crossing as an "at-grade railroad-highway grade crossing,"[4] Union Pacific asserts that the "private road that crossed the railroad tracks was essentially a driveway that led to a cattle-guard and locked gate protecting a pasture."[5]

---

[1] R. Doc. 49.

[2] *See*, R. Doc. 1, ¶¶ 23-31 and R. Doc. 48 (Status Report).

[3] R. Doc. 48 (Status Report).

[4] *Id*.

[5] R. Doc. 49, p. 1.

1

In its Motion, Union Pacific asserts that Plaintiffs served a corporate deposition notice on Union Pacific on March 4, 2016 seeking, *inter alia*, testimony and documents related to "the effectiveness of lights and gates."[6] During an April 18, 2016 status conference with the court, Plaintiffs withdrew topics 1-4 and 7-10 as set forth in "Exhibit A" to Plaintiffs' "Notice of Video Deposition Duces Tecum of Corporate Designee for Union Pacific Railroad Company regarding the Effectiveness of Lights and Gates."[7] Accordingly, Union Pacific's Motion seeks a protective order and to quash the deposition of its corporate designee regarding the following topics:[8]

> Area of Inquiry 5: "The effectiveness of railroad lights and gates, in reducing the risk of accidents at crossings. The history of active warning devices, such as lights and gates in the rail industry and your railroad's knowledge of the effectiveness of lights and gates…"[9]
>
> Area of Inquiry 6: "Does your railroad instruct its employees about the effectiveness of lights and gates at preventing accidents at crossings."

With regard to the above topics, Union Pacific argues that no law exists the would impose upon it a legal duty to install lights or gates at private railroad crossings, and therefore any

---

[6] R. Doc. 49, p. 2.

[7] R. Doc. 49-2.

[8] Area of Inquiry 10 provides that "[a]ll items requested below will be part of this area of inquiry, whether or not they are produced." "Items to be Produced in reference to this Area of Inquiry" are set forth as: (1) "any documents that reflect instruction provided to the railroad's train crews about the use and effectiveness of lights and gates as active warning devices at crossings;" (2) "any studies, recommendations, investigations, findings and other comments by entities like the FRA, USDOT, FHWA, NTSB and congressional committees regarding the effectiveness of active warning devices, such as lights and gates, to the extent the railroad is aware of them, and that they have not already been identified below;" (3) "documents showing how the railroad documents and/or monitors claims that the crossing has inadequate warning devices and lights and gates should have been installed;" and (4) "documents showing claims paid by the railroad when claims are made that the crossing has inadequate warning devices and lights and gates should have been installed." Accordingly, based on Plaintiffs' counsel's withdraw of Area of Inquiry 10, these document requests have also been withdrawn.

[9] This area of inquiry goes on to note that it will include discussion of "references to the attached pages from U.S. Railroad Safety Statistics and Trends by Peter W. French dated January 17, 2006, pages from Safe Grade Crossing Training Conference Hotel, Cosa Mesa California by Bill Browder dated May 2, 2005, Crossings for the 21st Century by Michael Martino dated March 14, 2011, AAR presentation: 'Gates cut the accident & fatality rates by 93%,' and Railroad Highway Grade Crossing Handbook, 1986 edition, p. 104." R. Doc. 49-2.

testimony regarding the effectiveness of lights and gates is irrelevant.[10] In support of this position, Union Pacific points out that while Louisiana law imposes certain statutory duties on railroads with regard to *public* grade crossings, and that case law may require a railroad to consider additional warning devices when a crossing is found to be a "dangerous trap," "[a] thorough review of Louisiana statutory and case law does not reveal a single authority that places any such legal duty on railroad companies with respect to private grade crossings – especially when one considers that the subject crossing is a far cry from a dangerous trap."[11] Union Pacific also argues that Area of Inquiry 6 "requests testimony and documents" on a topic that is "federally preempted and, therefore, irrelevant to this case."[12]

During the April 18, 2016 conference, counsel for Plaintiffs argued that, even assuming there is no statutory duty, Union Pacific still owes a duty of reasonable care and that Union Pacific's own crossing agreements sometimes require lights and gates at private crossings such as the one at issue here, which counsel described as having "public characteristics." Further, Plaintiffs' counsel argued that Union Pacific's own industry group has stated that lights and gates are effective and that Areas of Inquiry 5 and 6 are relevant to questions of Plaintiffs' potential comparative fault.

Having considered Union Pacific's Memorandum in Support of its Motion, as well as the parties' arguments presented during the April 18, 2016 conference, the Court requested supplemental briefing.[13] Specifically, the Court requested that Plaintiffs submit briefing regarding

---

[10] R. Doc. 49-1, p. 3 ("For testimony about the effectiveness of lights and gates to be relevant, Plaintiffs must first demonstrate at least some legal or factual basis to place a duty on Union Pacific to install same at the subject crossing. No such factual or legal basis exists in this case.").

[11] R. Doc. 49-1, p. 4.

[12] R. Doc. 49-1, p. 5.

[13] R. Doc. 58.

the basis for Union Pacific's duty to provide lights and/or gates at the crossing at issue in this litigation and that Union Pacific submit briefing on the basis for its assertion that it owes no legal duty (statutory or otherwise) to provide lights and/or gates at this crossing.[14] The Court has reviewed the supplemental briefing[15] and is now ready to rule.

## II. Analysis

### A. Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevancy is generally "construed broadly to encompass 'any matter than bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'" *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010) (citing *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of

---

[14] R. Doc. 58, p. 3.

[15] R. Docs. 62 & 63.

fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Here, Union Pacific argues that good cause exists for entry of a protective order and to quash the deposition of its corporate designee based on irrelevancy of the deposition topics.

### B. Potential Relevancy of Testimony regarding the Effectiveness of Lights and Gates

#### 1. Duty Under Louisiana Law

In its supplemental briefing, Union Pacific argues that "[n]either the federal regulations, Louisiana Revised Statutes, nor the [Manual on Uniform Traffic Control Devices] require railroad companies to install any form of traffic control or warning device at private crossings."[16] While Union Pacific acknowledges that certain warning devices are required by Louisiana statute at *public* crossings, it reasons that "[g]iven the absence of statutory authority on private crossings, the only logical interpretation is that a lesser standard applies at private crossings if any duty is owed at all."[17] Union Pacific further argues that "[t]he Louisiana jurisprudence is similarly void of authority that places a duty on railroad companies to install traffic control and/or warning devices at private crossings, even if a crossing is found to be a 'dangerous trap'" – a concept Union Pacific asserts "applies to responsibilities at public crossings"[18] – and that photographs of the crossing confirm that "even if this crossing was public, it was properly marked to advise motorists of the possibility of train traffic and is not a 'dangerous trap' that could justify additional warning/traffic control devices."[19]

---

[16] R. Doc. 62, p. 2.

[17] R. Doc. 62, p. 4.

[18] R. Doc. 62, p. 2.

[19] R. Doc. 62, pp. 3-4.

While Plaintiffs recognize there is no statutory duty at private crossings, they argue that Union Pacific "still has a common law duty to use reasonable care."[20] Plaintiffs further assert that "due to the unusual conditions at the time of this collision," the crossing should be considered a dangerous trap,[21] and that Union Pacific "assumed the duty to install appropriate warning devices when it installed the stop sign and private crossing sign at this crossing" such that it was required to perform its duty using reasonable care.[22] Plaintiffs also argue that at the time of the collision, Union Pacific "knew oil and gas business employees, such as Plaintiffs, were using this crossing" and had "designated this crossing as a private crossing 'with public characteristics.'"[23] In light of such knowledge, Plaintiffs reason that Union Pacific "is charged with the duty of exercising reasonable care, including implementing precautions to warn the public of its trains."[24]

Despite Union Pacific's argument to the contrary, Louisiana courts have previously imposed a duty of reasonable or ordinary care upon railroads in the context of private crossings. *See*, *Ortolano v. Morgan's L. & T. R. & S.S. Co.*, 33 So. 914, 917 (La. 1903) ("'It may be that these obligations were not imposed by general ordinance or statute, but there are certain obligations imposed upon railroad corporations which exist independently of convention or ordinance or statute. There is a duty imposed upon every one, whether natural persons or artificial persons, to avoid by proper care doing injury to others through their fault.'") (citation omitted); *Townsend v. Missouri Pac. R. Co.*, 3 La. App. 598, 603-4 (La. App. 2 Cir. 1925) ("As a rule the company is not

---

[20] R. Doc. 63, p. 2.

[21] R. Doc. 63, p. 2. Plaintiffs list the "unusual conditions" as "rain and fog impairing visibility, high-speed trains, high industrial vehicular usage, vegetation with a curve in the track, and lack of an audible train horn." R. Doc. 63, pp. 2-3.

[22] R. Doc. 63, p. 3.

[23] R. Doc. 63, p. 4.

[24] R. Doc. 63, p. 4. Plaintiffs go on to state that Union Pacific "treated this industrial crossing as a farm crossing" and "had a duty of reasonable care when it knew this crossing changed use from a farm to commercial crossing…." R. Doc. 63, p. 5.

required at [private crossings] to give the signals required by statute or otherwise at public crossings, but it may, in particular instances, be a question for the jury, whether in the particular case it is negligence to omit the warning signals….situations may arise from which the company ought reasonably to foresee danger, and in such cases it has been held that the company is not absolved from ordinary care and precautions to prevent injuries.").

Furthermore, this Court has found no authority limiting the "dangerous trap" doctrine to public crossings. *See*, *Stacey v. Illinois Cent. R.R.*, 491 F.2d 542 & 546 (5th Cir. 1974) (applying the "dangerous trap" doctrine to a private grade crossing and noting that the doctrine "places upon the railroad…a duty of exercising caution commensurate with the situation involved" such that a railroad's "protection from exposure to liability in crossing accidents must be found in actions which are reasonably commensurate with the dangers and extent of use of the crossing involved…."); *Holland v. Norton*, 70 F.Supp.2d 666, 670-71 (E.D. La. 1999) (considering whether private crossing was a dangerous trap). Under the doctrine, "[a] crossing is considered a "dangerous trap" when it is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has a view of the oncoming train." *Rivere v. Union Pacific R. Co.*, 647 So. 2d 1140, 1145 (La. App. 1 Cir. 1994). "When a dangerous trap exists, the railroad company will be held liable, unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warning or providing signaling devices, etc." *Id*.

The Court recognizes that some cases indicate that the "dangerous trap" doctrine is the sole source of duty outside of the requirements set out by statute. *See*, *Davis v. Canadian Nat. Ry.*, 137 So. 3d 11, 13 (La. 2014) (where statutorily-required cross-bucks were installed, "[t]he only remaining issue was for the district court to determine whether defendants owed any further duty

7

to warn roadway users of the presence of the crossing, which required an analysis of whether this crossing constituted a 'dangerous trap.'"); *Gauthier v. Union Pacific R.R. Co.*, 644 F.Supp.2d 824, 842 (E.D. Tex. 2009) ("Additional warning devices are not required under Louisiana law unless the crossing constitutes a 'dangerous trap.'"). However, the Louisiana Supreme Court has also imposed extra-statutory duties on railroads based on "unique and local safety hazards." *Duncan v. Kansas City Southern Railway Co.*, 773 So. 2d 670, 676-77 (La. 2000) (Although record demonstrated railroad's compliance with La. R.S. §32:169, plaintiffs also alleged railroad had a "duty to properly maintain the right of way, adequate sight distances, and to post sufficient 'warning signs, marks and signals commensurate with the danger of the crossing,'" and based on expert testimony "the jury could have reasonably concluded that [railroad] had a duty to plaintiffs to protect against the unique hazard presented" by the crossing.). *See also*, *Union Pacific R. Co. v. Cezar*, 293 S.W.3d 800, 810-11 (Tex. Ct. App. 2009) (rejecting Union Pacific's argument that it had no legal duty to install warning devices where it complied with statutory requirements and the jury found the crossing was not a dangerous trap and concluding that "UP had a legal duty to motorists to exercise the control it did possess over installing additional warning devices at the crossing in a reasonable and prudent manner….").

As noted by one court, "Louisiana courts have imposed an additional duty depending on the known circumstances existing at a crossing involved in a collision." *Union Pacific R. Co. v. Cezar*, 293 S.W.3d 800, 808 (Tex. Ct. App. 2009). Where "the record contains evidence that raises a reasonable inference that the railroad possessed knowledge of risks posed by unique circumstances at a crossing, and also possessed knowledge that adequate steps had not been taken to make the condition safe," a railroad's duty is not discharged by compliance with statutory

requirements. *Id*. (citing *Duncan v. Kansas City Southern Railway Co.*, 773 So. 2d 670 (La. 2000)).[25]

Based on the above jurisprudence, Union Pacific's argument that there is no legal authority that may impose upon it a duty to install lights and gates at this crossing is unavailing. As set forth above, Louisiana courts have imposed duties of ordinary care at private railroad crossings. Moreover, Louisiana courts have recognized that circumstances unique to a particular crossing may impose duties upon a railroad commensurate with the danger of the crossing. Here, Plaintiffs argue that "unusual conditions" rendered this crossing unsafe and that Union Pacific was aware of this private crossing with "public characteristics." Under such circumstances, and in light of the generally broad scope of discovery, this Court finds that testimony regarding the effectiveness of lights and gates is relevant.

### 2. Federal Preemption

"A party asserting federal preemption generally bears the burden of proving that issue." *Union Pacific R. Co. v. Cezar*, 293 S.W.3d 800, 812 (Tex. Ct. App. 2009). As noted above, Union Pacific asserts that inquiry into instruction or training of Union Pacific employees about the effectiveness of lights and gates at preventing accidents at crossings "touches on railroad crew training" and is therefore preempted by federal law and irrelevant.[26] Other than citing to a Seventh Circuit case in which certain aspects of a Wisconsin state statute were determined to be preempted, Union Pacific provides little support for its position.[27] In response, Plaintiffs assert that Union

---

[25] Even with regard to the statutory requirements regarding cross bucks, stop and warning signs, and traffic control devices at public crossings set out in La. R.S. 32:169, the statute itself contains the caveat that "[n]othing in this Section shall relieve a railroad company of its responsibility to maintain safe crossings." La. R.S. § 32:169(F).

[26] R. Doc. 49-1, p. 5.

[27] Union Pacific relies on *Burlington Northern and Santa Fe Railway Co. v. Doyle*, 186 F.3d 790 (7th Cir. 1999). *See*, R. Doc. 49-1, p. 5. There, four railroads sought a declaration that a Wisconsin law requiring train crews to consist of at least two members and also requiring crew members to have certain qualifications was preempted by federal regulations promulgated under the Federal Rail Safety Act. The Seventh Circuit found the Wisconsin statute's crew

9

Pacific has an obligation to train its employees on federal regulations and internal rules and that, "compliance with federal regulations is a prerequisite for preemption."[28] Accordingly, Plaintiffs reason that discovery regarding Union Pacific's compliance with federal regulations and its own internal rules on crew training is relevant and discoverable.[29]

Pursuant to 49 C.F.R. § 217.1 "each railroad is required to instruct its employees in operating practices." Under 49 C.F.R. § 218.11, the operating rules set forth therein "and any additional or more stringent requirements issued by a railroad" are subject to the provisions of Part 217. In their Complaint, Plaintiffs assert, *inter alia*, that the collision was caused by Union Pacific's negligence in "failing to appropriately instruct, supervise and monitor its employees as required by 49 C.F.R. §§ 217.1 and 218.11."[30] To the extent Plaintiffs assert that Union Pacific failed to comply with federal regulations, the Court agrees that inquiry into compliance with federal regulations and Union Pacific's own rules on crew training is relevant and discoverable. *See*, *Jeffers v. BNSF Ry. Co.*, 2014 WL 1773532, at *4 (W.D. La. May 1, 2014) (finding plaintiffs' state law negligence claim that railroad breached its duty to maintain a culvert was not preempted and noting that the federal regulation itself "provides the standard of care under which the actions of [defendant] are to be judged for negligence.").[31]

---

qualification provisions were preempted. *Id.* at 796-97. Assuming that *Doyle* stands for the proposition that all issues of crew training are preempted by federal law, as discussed herein, Plaintiffs are alleging breaches of federal regulations in the instruction of Union Pacific's employees.

[28] R. Doc. 63, p. 5.

[29] R. Doc. 63, p. 5.

[30] R. Doc. 1, ¶ 45(a).

[31] Moreover, the Court notes that pursuant to 29 U.S.C. § 20106, while "[l]aws, regulations, and orders related to railroad safety…shall be nationally uniform to the extent practicable," "[n]othing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party (A) has failed to comply with the Federal standard of care established by regulation or order…; (B) has failed to comply with its own plan, rule or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)."

### III. Conclusion

For the reasons stated herein, Union Pacific's Motion for Protective Order is DENIED.[32]

Signed in Baton Rouge, Louisiana, on May 5, 2016.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[32] R. Doc. 49.