**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**MICHAEL TODD RYDER, ET AL.**
**VERSUS**

**UNION PACIFIC RAILROAD COMPANY, ET AL.**

**CIVIL ACTION**

**NUMBER 15-431-SDD-EWD**

**RULING AND ORDER ON PLAINTIFFS' MOTION FOR AN ORDER COMPELLING UNION PACIFIC RAILROAD COMPANY'S 30(B)(6) CORPORATE DESIGNEE REGARDING TRAIN HORN AUDIBILITY AND UNION PACIFIC'S MOTION FOR PROTECTIVE ORDER ON PLAINTIFFS' NOTICE FOR A CORPORATE DEPOSITION ON HORN AUDIBILITY**

Before the court is Plaintiffs' Motion for an Order Compelling Union Pacific Railroad Company's 30(b)(6) Corporate Designee Regarding Train Horn Audibility (the "Motion to Compel")[1] and Union Pacific's Motion for Protective Order on Plaintiffs' Notice for a Corporate Deposition on Horn Audibility (the "Motion for Protective Order").[2] For the reasons set forth herein, the Motion to Compel is GRANTED. The Motion for Protective Order is DENIED.

## I. Background

This suit arises out of a February 16, 2015 collision between Plaintiffs' vehicle and Union Pacific's train.[3] The parties agree that the collision occurred at a private drive crossing (the "Crossing").[4] At the time of the collision, the decedents' vehicle was stopped on the Crossing.[5] Plaintiffs have named several defendants in their Complaint, including Union Pacific.[6] Against Union Pacific, Plaintiffs allege fault based on several negligence theories including inadequate

[1] R. Doc. 80.

[2] R. Doc. 81.

[3] R. Doc. 1, p. 6, ¶ 28 ("Complaint").

[4] *See* R. Doc. 1, p. 5, ¶ 26 ("The Private Drive Crossing is a private crossing that has railroad tracks running north and south…."); R. Doc. 81-1, p. 5 (Union Pacific's argument that horn warnings are not legally required at private crossings).

[5] R. Doc. 1, p. 6, ¶ 28.

[6] R. Doc. 1, p. 2-4, ¶ 6-16.

visual warning, inadequate audible warning, negligent train operations, failure to inspect and repair unsafe crossing, and failure to properly train, instruct, and manage employees.[7]

Regarding the allegation of inadequate audible warning, Plaintiffs claim that the collision was "a direct and proximate result of the negligence of [Union Pacific]" based on a) failure to ensure the horn complied with audibility requirements of 49 C.F.R. § 229.129, b) failure to use an emergency horn sequence, and c) failure to advise or instruct employees of the deficiencies and safety issues involved in train mounted audible warning systems.[8] Plaintiffs further allege that investigation of the collision has revealed no evidence that the driver was physically able to hear the train horn in time to react and avoid the accident, and thereby plead that no fault can be assessed to the driver for the resulting collision.[9]

In its answer to the Complaint, Union Pacific raised as a defense that the driver of the vehicle was the sole cause of the collision for, among other reasons, "[f]ailing to look and/or listen for the subject train," "[f]ailing to hear what he should have heard," and "[f]ailing to heed to the warning devices present at the subject crossing."[10] Union Pacific further asserted the affirmative defense of federal preemption under the Federal Railroad Safety Act ("FRSA") regarding allegations based on training of employees, audible warning devices, and inspection, maintenance, and repair.[11]

On June 1, 2016, Plaintiffs sent a Notice of Video Deposition Duces Tecum of Corporate Designees for Union Pacific Railroad Company Regarding Train Horn Audibility (the "Notice").[12]

---

[7] *See*, R. Doc. 1, p. 6-16.

[8] R. Doc. 1, p. 7, ¶ 33.1 [sic].

[9] R. Doc. 1, p. 7, ¶ 34.

[10] R. Doc. 7, p. 12-13, ¶ 90.

[11] R. Doc. 7, p. 14, ¶ 92.

[12] R. Doc. 81-2.

Following a series of communications between the parties, Plaintiffs filed the Motion to Compel and Union Pacific filed the Motion for Protective Order.[13] In Plaintiffs' Motion to Compel, Plaintiffs assert that Union Pacific's "central objection boils down to its assertion that claims involving the train horn are preempted, and therefore, any discovery even touching upon the train horn is improper."[14] While Plaintiffs recognize that "their horn claim may be preempted by 49 C.F.R. Part 222," they assert that such preemption does not preclude discovery relevant to the contributory negligence defense.[15] As Plaintiffs explain, "Union Pacific has made the affirmative defense that Plaintiff John Cameron Watson was negligent for failing to hear the train horn. As a result, discovery regarding train horn audibility is plainly relevant to Plaintiffs' defense of Union Pacific's claim."[16]

In response to Plaintiffs' Motion to Compel, Union Pacific seeks a protective order asserting that a corporate deposition on "horn audibility" is irrelevant and disproportional because: (1) the law does not require horn warnings at private crossings; and (2) "even if it did, the subject matter of horn audibility is strictly regulated by 49 C.F.R. § 229.129 and cannot be questioned in this or any other case" (*i.e.*, is federally preempted).[17] Union Pacific further asserts that it has "already produced its operating rules on horn use and documents regarding pre and post-incident horn testing/certification."[18]

---

[13] Union Pacific filed an opposition to the Motion to Compel wherein it adopted and incorporated by reference its Motion for Protective Order. R. Doc. 82. Similarly, Plaintiffs adopted and incorporated by reference their Motion to Compel in response to Union Pacific's Motion for Protective Order. R. Doc. 90.

[14] R. Doc. 80, p. 1.

[15] R. Doc. 80-1, p. 6.

[16] R. Doc. 80, p. 1.

[17] R. Doc. 81, p. 1.

[18] R. Doc. 81-1, p. 4.

A hearing on the Motion to Compel and Motion for Protective Order was held on November 1, 2016 before the undersigned. During the hearing, counsel for the Plaintiffs agreed to limit the areas of inquiry sought in the Notice to topic numbers 6 through 10.[19] Additionally, counsel for Plaintiffs clarified that Plaintiffs do not seek post-incident information with respect to topics 8 and 9, but argued that historical information was relevant.[20] Based on the court's discussion with the parties during the hearing, the following topics remain regarding the Motion to Compel and Motion for Protective Order:[21]

> **No. 6**: Below, in the section entitled "Train Horn Audibility Timeline" are quotes from the treatises and government sources relating to limitations on the effectiveness of train horns. Your railroad's knowledge of these sources and the audibility issue will be an area of inquiry, as will your knowledge of any additional authorities.
>
> **No. 7**: Does your railroad instruct train crews about the limitations on the effectiveness of train horns?
>
> **No. 8**: Whether your railroad utilizes an "emergency horn" sequence consisting of a series of short horn blasts, and when it is appropriate to use the emergency horn sequence.

---

[19] R. Doc. 101.

[20] R. Doc. 101.

[21] The court also considers the production requests related to the remaining topics. Production request number 8 asks Union Pacific to produce "[a]ny studies, recommendations, investigations, findings and other comments by entities like the FRA, USDOT, FHWA, NTSB and congressional committees regarding train horn audibility issues, to the extent the railroad is aware of them, and that they have not already been identified below." Union Pacific's Motion for Protective Order does not address production request number 8; however, the court reads that request to correspond with topic number 6 and therefore addresses it in tandem with topic number 6. Production request number 3 asks Union Pacific to produce "[a]ny documents that reflect instruction provided to the railroad's train crews about the use and effectiveness of audible warning devices on locomotives." Union Pacific asserts that it has already produced documents that reflect its instructions on horn use, and asks this court to strike the request to the extent it seeks documents regarding the effectiveness of train horns. R. Doc. 81-1, p. 10. The court finds document request number 3 relates to topic number 7. Finally, production request number 11 seeks "[a]ll documentation reflecting the instruction of train crews in the use of an emergency horn sequence (a series of short blasts). Please include the old crossing horn rule, the general order (or other such directive) changing the old rule, and the new horn rule that excludes emergency horn usage at crossings." Union Pacific has moved this court to limit topic numbers 8 and 9 "and corresponding document requests" to "its operating rules and/or instructions in place at the time of the subject incident….". R. Doc. 81-1, p. 11. The court finds that production request number 11 "corresponds" to topic numbers 8 and 9.

> **No. 9**: What has your railroad done to provide train crews with information to assist them with the decision to use an emergency horn sequence before a crossing accident or near accident occurs?
>
> **No. 10**: Why and when was the rule for emergency horn changed in the General Code of Operating Rules to exclude crossings? What was your involvement in those changes?

Following the hearing, the court took the matter under advisement and is now ready to rule.

## II. Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"Generally, the scope of discovery is very broad, though it is not unlimited." *Heck v. Buhler*, 2015 WL 7432367, at * 2 (M.D. La. Nov. 23, 2015) (citing *Crosby v. Louisiana Health Serv. & Indent. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). *See also*, *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014) ("The general scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.' The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.") (internal citations omitted). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure. Fed. R. Civ. P. 37(a)(1) & 37(a)(3)(B)(iv). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

**B. Federal Preemption Under the Federal Railroad Safety Act**

"The Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20106 (formerly 45 U.S.C. § 434), was enacted 'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *United Transp. Union v. Foster*, 205 F.3d 851, 859 (5th Cir. 2000) (quoting 49 U.S.C. § 20101). "In order to promote safety at railroad grade crossings, the FRSA provides that the Secretary of Transportation 'as necessary, shall prescribe regulations and issue orders for every area of railroad safety supplementing [existing] laws and regulations.'" *Id.* (quoting 49 U.S.C. § 20103). Congress has expressly defined the preemptive scope of any promulgated regulations in 49 U.S.C. § 20106(a)(1) & (2), which provide:

> (1) Laws, regulations, and orders related to railroad safety…shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety…until the Secretary of

> Transportation…prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order, or standard related to railroad safety…when the law, regulation, or order—
>
> (A) is necessary to eliminate or reduce an essentially local safety…hazard;
>
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (C) does not unreasonably burden interstate commerce.

As observed by the Fifth Circuit, "FRSA preemption is even more disfavored than preemption generally." *Foster*, 205 F.3d at 859 (quoting *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 515 (5th Cir. 1999)). "When applying FRSA preemption, the Court eschews broad categories such as 'railroad safety', focusing instead on the specific subject matter contained in the federal regulation." *Id*. "[W]hen deciding whether the FRSA preempts state laws designed to improve railroad safety, [the Fifth Circuit] interpret[s] the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted in favor of the federal government." *Id*.

Significantly, "the preemption clause does not prevent actions under state law seeking damages for personal injury, death, or property damage alleging that a defendant failed to comply with the federal standard of care established by a regulation or order issued by the Secretary of Transportation or the Secretary of Homeland Security; failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or, failed to comply with a state law, regulation or order that is not incompatible with [49 U.S.C. § 20106(a)(1)(2)]." *Alfaro v. National Railroad Passenger Corp.*, 2012 WL 12865241, at * 4 (E.D. La. Oct. 3, 2012). *See also*, 49 U.S.C. § 20106(b) ("(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property

damage alleging that a party – (A) has failed to comply with the Federal standard of care established by a regulation…(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order…(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).”); *Illinois Cent. R. Co. v. Cryogenic Transp., Inc*., 901 F.Supp.2d 790, 798 (S.D. Miss. 2012) (distinguishing between regulations which provide a “standard of care” with which the railroads must comply and specific rules that supplant the railroad’s decision making and explaining that in the former case, “where a regulatory standard of care creates an affirmative duty for the railroad to act, the plaintiff may sue, alleging the railroad violated that standard of care.”).

**C. Federal Preemption and Train Horn Audibility and/or Effectiveness (Topic Areas 6 and 7 and Production Requests 3 and 8)**

As discussed above, during the hearing, counsel for Plaintiffs asserted that they still seek to depose Union Pacific regarding topics 6 and 7:

> **No. 6**: Below, in the section entitled “Train Horn Audibility Timeline” are quotes from the treatises and government sources relating to limitations on the effectiveness of train horns. Your railroad’s knowledge of these sources and the audibility issue will be an area of inquiry, as will your knowledge of any additional authorities.
>
> **No. 7**: Does your railroad instruct train crews about the limitations on the effectiveness of train horns?

Union Pacific asks this court to strike topics 6 and 7, as well as related production requests 3 and 8, because this discovery “touches on horn ‘audibility’ and/or ‘effectiveness’”[22] and is therefore preempted. In contrast, Plaintiffs contend that a corporate deposition “regarding Union Pacific’s knowledge of the deficiencies in the audibility of train horns, its reliance on train horns as a primary warning device at passive crossing, and its training of train crews regarding train horn

[22] R. Doc. 81-1, p. 10.

audibility are directly relevant to Plaintiffs' contributory negligence defense."[23] As noted above, while Plaintiffs recognize that "their horn claim may be preempted by 49 C.F.R. Part 222," they assert that such preemption does not preclude discovery relevant to the contributory negligence defense.[24]

The court reads these requests as relating generally to the effectiveness and/or audibility of train horns. Significantly, although Union Pacific asserts that inquiry into the area of the effectiveness of train horn audibility is "irrelevant and disproportional to the needs of this case in light of the private nature of the crossing and the doctrine of federal preemption,"[25] Union Pacific has not moved the court for summary judgment nor filed a motion in limine on the issue of federal preemption related to train horn audibility.[26] This court recognizes that the federal regulations address the method by which a locomotive horn is to be used (at least at public crossings), as well as the decibel level and placement for such horns.[27] This court makes no determination here, however, regarding the applicability of the federal regulations to the Crossing, nor the potential preemptive effect of such regulations. As discussed herein, the court finds that Union Pacific is,

---

[23] R. Doc. 80-1, p. 4.

[24] R. Doc. 80-1, p. 6.

[25] R. Doc. 81, p. 1.

[26] Union Pacific argues that "[c]ourts nationwide have…held that the subject matter of horn audibility is federally preempted and evidence attacking same is neither admissible nor discoverable." R. Doc. 81-1, p. 8. In support of that position, Union Pacific cites *Short v. Union Pacific R.R. Co.*, 315 P.3d 400 (Okla. App. 2013) and *Eubanks v. Norfolk Southern Ry.*, 875 F.Supp.2d 983 (N.D. Ind. 2012). However, in both *Short* and *Eubanks* the issue of federal preemption was raised in the context of motions for summary judgment and defendants' assertions that certain state law tort claims were federally preempted. Additionally, Union Pacific argues that a discovery order issued in *Rawls v. Union Pacific Railroad, et al.*, No. 09-cv-01037, United States District Court, Western District of Arkansas, which Plaintiffs attach in support of their Motion to Compel, "actually reinforces Union Pacific's position" because that court "held that the topic of horn 'effectiveness,' which is the focal point of the Notice in this case, was off-limits." R. Doc. 81-1, p. 9. *See also*, R. Doc. 80-14. It is true that the *Rawls* court granted Union Pacific's motion to quash certain areas of inquiry related to horn audibility. R. Doc. 80-14, p. 4-6. However, that court did not do so on the basis of federal preemption. Further, that court noted that while federal preemption "may prevent the admissibility of such evidence at trial, it does not result in a finding that such information is beyond the reach of discovery." R. Doc. 80-14, p. 2.

[27] *See*, 49 C.F.R. § 222.21 (providing when and how a locomotive horn must be used at a public highway crossing) & 49 C.F.R. § 229.129 (setting out requirements for placement and decibel level of the locomotive horn).

at base, asking this court to rule on a dispositive issue, *i.e.*, the viability of Plaintiffs' horn audibility claims. Although it is possible that the District Judge may ultimately find that any claims based on train horn audibility are preempted, the court finds that the instant discovery motions are an improper mechanism for seeking such relief. At this juncture, Union Pacific asks this court to preclude discovery into issues that are relevant to active claims in this litigation.

Prohibiting discovery based on an assumption that Union Pacific will be successful in establishing federal preemption as an affirmative defense is premature, especially in light of this Circuit's admonishment that "FRSA preemption is even more disfavored than preemption generally," *Foster*, 205 F.3d at 859, and the language of 49 U.S.C. § 20106(b) (allowing, *inter alia*, claims based on failure to comply with federal regulations or a railroad's own rules and standards). As discussed above, Plaintiffs have alleged that Union Pacific was negligent in failing to ensure the horn complied with audibility requirements of 49 C.F.R. § 229.129, failing to use an emergency horn sequence, and failing to advise or instruct employees of the deficiencies and safety issues involved in train mounted audible warning systems.[28] Further, Union Pacific has asserted as an affirmative defense that the driver of the vehicle was the sole cause of the collision for, among other reasons, "[f]ailing to look and/or listen for the subject train," "[f]ailing to hear what he should have heard," and "[f]ailing to heed to the warning devices present at the subject crossing."[29] Topics 6 and 7 and production requests 3 and 8 seek information generally related to the effectiveness and/or audibility of train horns. While Union Pacific may ultimately be successful in establishing its affirmative defense of federal preemption regarding the issue of effectiveness and/or audibility of train horns, the court finds that Union Pacific's Motion for Protective Order is not the appropriate mechanism for resolving that issue. At this point in the

---

[28] R. Doc. 1, p. 7, ¶ 33.1 [sic].

[29] R. Doc. 7, p. 12-13, ¶ 90.

litigation, discovery into these issues is relevant to active claims in the litigation. Accordingly, the court DENIES Union Pacific's Motion for Protective Order and GRANTS Plaintiffs' Motion to Compel with regard to topics 6 and 7, as well as related production requests 3 and 8.

### D. Emergency Horn Sequence (Topic Areas 8, 9, and 10 and Production Request 11)

Plaintiffs also seek to compel Union Pacific's corporate deposition related to topics 8, 9, and 10:[30]

> **No. 8**: Whether your railroad utilizes an "emergency horn" sequence consisting of a series of short horn blasts, and when it is appropriate to use the emergency horn sequence.
>
> **No. 9**: What has your railroad done to provide train crews with information to assist them with the decision to use an emergency horn sequence before a crossing accident or near accident occurs?
>
> **No. 10**: Why and when was the rule for emergency horn changed in the General Code of Operating Rules to exclude crossings? What was your involvement in those changes?

With regard to these topics, Union Pacific requests "that the inquiries and corresponding document requests be limited to its operating rules and/or instructions in place at the time of the subject incident on the grounds that historical and post-incident information is neither relevant nor proportional to the needs of the case."[31] During the hearing, counsel for Plaintiffs clarified that Plaintiffs do not seek to depose Union Pacific regarding post-incident information. However, Plaintiffs argued that historical information regarding these topics was relevant to showing that Union Pacific previously had in place rules regarding sounding of an emergency horn sequence and that such rules were subsequently removed.

---

[30] As noted above, the court also includes within its consideration of these topic areas document request 11.

[31] R. Doc. 81-1, p. 11.

49 C.F.R. § 222.23(a) provides that a locomotive engineer has discretion in choosing to sound the train horn in an emergency situation.[32] 49 C.F.R. § 222.23(a)(2) "does not preclude the sounding of locomotive horns in emergency situations, nor does it impose a legal duty to sound the locomotive horn in such situations." Unlike the regulations addressing when and how the horn must generally be sounded at public crossings, 49 C.F.R. § 222.23(a) is not limited to public crossings.[33]

While § 222.23 does not impose a legal duty upon the engineer to sound the horn, federal law also makes clear that a claim that a defendant "has failed to comply with its own plan, rule, or standard that it created" is not preempted. 49 U.S.C. § 20106(b); *Holstine v. National R.R. Passenger Corp.*, 2015 WL 3766804, at *9, n. 4 ("Under 49 U.S.C. § 20106(b), a state-law claim that a defendant 'has failed to comply with its own plan, rule, or standard that it created' is not preempted."). *See also, Baker v. BNSF Railway Co.*, 2010 WL 4063203, at * 8 (N.D. Tex. Oct. 13, 2010) (denying summary judgment based on fact issue as to whether engineer complied with railroad's internal guidelines "by maintaining a safe course and remaining alert and attentive.").

Discovery on whether and to what extent the engineer chooses to sound the horn in an emergency situation is relevant as is whether Union Pacific has a plan, rule, or standard for such situations, and whether and why that has changed over time, in light of the law's recognition that

[32] 49 C.F.R. § 222.23(a)(1) provides that "[n]otwithstanding any other provision of this part, a locomotive engineer **may** sound the locomotive horn to provide a warning to animals, vehicle operators, pedestrians, trespassers or crews on other trains in an emergency situation if, in **the locomotive engineer's sole judgment**, such action is appropriate in order to prevent imminent injury, death, or property damage."

[33] During the hearing, counsel for Union Pacific argued that the regulations set forth in 49 C.F.R. § 222.1 *et seq.* are limited in applicability to only public railroad crossings. The court recognizes that the regulations are written to generally address safety at public railroad crossings. *See,* 49 C.F.R. § 222.1. However, the court notes that in contrast to 49 C.F.R. § 222.21, which generally controls the manner of sounding the train horn "when such locomotive or lead cab car is approaching a public highway-rail grade crossing," 49 C.F.R. § 222.23 provides that "notwithstanding" the other regulations, an engineer may sound the locomotive horn in "an emergency situation." The court further notes that such "emergency situations" may well occur somewhere other than a public railroad crossing (*i.e.*, an animal on the tracks).

a railroad's duty may stem from its internal standards and rules. Accordingly, the court DENIES Union Pacific's Motion for Protective Order and GRANTS Plaintiffs' Motion to Compel with regard to topics 8, 9, and 10 as well as related production request 11. Union Pacific shall produce documents and a corporate representative(s) to testify regarding these topics historically as well as at the time of the subject incident.

## III. Conclusion

For the reasons stated herein, the Motion to Compel[34] is **GRANTED**. The Motion for Protective Order[35] is **DENIED**.

**IT IS HEREBY ORDERED** that Union Pacific shall provide a corporate representative(s) to testify regarding to topics 6 and 7 and shall produce documents responsive to production requests 3 and 8.

**IT IS FURTHER ORDERED** that Union Pacific shall provide a corporate representative to testify regarding topics 8, 9, and 10 and shall produce documents responsive to production request 11. Union Pacific shall produce documents and a corporate representative(s) to testify regarding information about these topics historically as well as at the time of the subject incident.

Signed in Baton Rouge, Louisiana, on November 14, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

[34] R. Doc. 80.

[35] R. Doc. 81.