UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**MICHAEL TODD RYDER, ET AL.**  CIVIL ACTION

**VERSUS**  NUMBER 15-431-SDD-EWD

**UNION PACIFIC RAILROAD COMPANY, ET AL.**

## RULING ON PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND IMPOSE SANCTIONS

Before the court is a Motion to Compel Discovery and Impose Sanctions (the "Motion") filed by Plaintiffs.[1] The Motion is opposed by defendant, Union Pacific Railroad Company and Union Pacific Corporation ("Union Pacific").[2] For the reasons set forth herein, the Motion is **DENIED**. Plaintiffs are granted a limited extension of the fact discovery deadline through and including October 15, 2017 to depose Billy Fuller.

### I. Background

This suit arises out of a February 16, 2015 collision between decedents' vehicle and Union Pacific's train.[3] The parties agree that the collision occurred at a private drive crossing (the "Crossing"). At the time of the collision, the decedents' vehicle was stopped on the Crossing.[4] Plaintiffs named several defendants in their Complaint, including Union Pacific.[5] Against Union Pacific, Plaintiffs allege fault based on several negligence theories including inadequate visual warning, inadequate audible warning, negligent train operations, failure to inspect and repair an

---

[1] R. Doc. 172.

[2] R. Doc. 186.

[3] R. Doc. 1, p. 6, ¶ 28.

[4] R. Doc. 1, p. 6, ¶ 28.

[5] R. Doc. 1, p. 2-4, ¶ 6-16.

1

unsafe crossing, and failure to properly train, instruct, and manage employees.[6] Per the Amended Scheduling Order, the deadline for filing all discovery motions and completing all discovery except experts was May 1, 2017.[7] The case is currently assigned for a jury trial before Judge Dick beginning Monday, February 5, 2018.[8]

On April 25, 2017, a motion hearing was held and the court ruled on various discovery motions filed by the parties.[9] Significant to the instant Motion, the court: (1) granted Plaintiffs' Motion to Compel Public Safety/Operation Lifesaver Documents ("Motion to Compel OLI Documents") and extended the discovery period to allow Plaintiffs to proceed with the deposition of Mr. Buck Russel, Manager of Public Safety for Union Pacific;[10] and (2) deferred Plaintiffs' motion to compel documents related to Union Pacific's efforts to identify users of the Crossing and crossing agreements in light of the upcoming deposition of Mr. David LaPlante of Union Pacific's Real Estate Department.[11]

The thrust of Plaintiffs' Motion is that during the May 16, 2017 deposition of Mr. Russel, he "revealed, for the first time, that Union Pacific had prior communications with users of this private crossing and Union Pacific gave at least four safety presentations for crossing users prior to this collision."[12] Plaintiffs assert that Mr. Russel disclosed that these safety presentations were

---

[6] *See*, R. Doc. 1, pp. 6-16.

[7] *See*, R. Doc. 98.

[8] R. Doc. 77.

[9] *See*, R. Doc. 160.

[10] R. Doc. 134.

[11] With respect to this deferral, the court instructed Plaintiffs to file a supplemental certification or Motion to Withdraw by May 1, 2017. Plaintiffs failed to timely file either and the court denied Plaintiffs' motion to compel with respect to these documents. *See*, R. Doc. 164. Thereafter, on May 19, 2017, Plaintiffs filed a Supplemental Certification Regarding Unresolved Discovery Issues (the "Supplemental Certification"). R. Doc. 168. Plaintiffs did not address the timeliness of the Supplemental Certification with respect to Mr. LaPlante's deposition.

[12] R. Doc. 172, p. 1.

2

given by a Union Pacific employee, Billy Fuller, "who was never disclosed" prior to Mr. Russel's deposition despite Plaintiffs' efforts to obtain "this information and documentation over a year prior to the discovery deadline."[13] Plaintiffs additionally assert that, despite this court's ruling granting their motion to compel, Mr. Russel failed to produce all required OLI documents, and that additional corporate depositions are necessary to address issues not satisfactorily covered during the depositions of Mr. LaPlante and Mr. Russel.[14]

Plaintiffs contend that they have been prejudiced by Union Pacific's conduct, which Plaintiffs describe as "in bad faith and in willful disregard of basic principles and rules governing discovery."[15] Although Plaintiffs' Motion is styled as a motion to compel and a motion for sanctions, Plaintiffs' requested relief is focused on the imposition of the following sanctions: (1) allowance of a period of "unilateral discovery into the [Union Pacific] Lotus Notes database and any other database that contains information on this crossing" and appointment of "a special master to assist the parties in completing a search of Union Pacific's computers, databases, and network for all electronically stored information relating to this crossing and this collision;" (2) preclusion of Union Pacific from "offering any evidence and/or argument that it was unaware large oil field companies and their equipment were regularly traversing this crossing;" (3) a jury instruction "that Union Pacific had actual knowledge in as early as 2008 that large oil companies were regularly using this crossing and that after this knowledge it did nothing to determine the adequacy of the warning devices at the Private Drive Crossing;" and (4) imposition of fees, costs, and "an

---

[13] R. Doc. 172, p. 1.

[14] *See*, R. Doc. 172-1, p. 5 ("Plaintiffs have already filed a Supplemental Certification advising the court that Buck Russel and David LaPlante were not able to address key areas of inquiry….All allegations contained in the Supplemental Certification are incorporated herein by reference."); R. Doc. 168, p. 3.

[15] R. Doc. 172, p. 2.

3

additional monetary sanction to insure Union Pacific does not benefit from its own misconduct and to deter future misconduct."[16]

## II. Law and Analysis

### a. Legal Standards

"Federal district courts have the inherent power, as well as the authority expressly granted under the Federal Rules of Civil Procedure, to impose sanctions where warranted." *Reyes v. Julia Place Condominiums Homeowners Association, Inc.*, Civil Action No. 12-2043, 2016 WL 5871278, at * 2 (E.D. La. Oct. 7, 2016). Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery…the court where the action is pending may issue further just orders" including "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." *See also*, *Smith & Fuller v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) ("'Fed. R. Civ. P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed.R.Civ.P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order.'") (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir.1983)). While a district court

---
[16] R. Doc. 172, p. 2.

has "broad discretion" in fashioning remedies suited to the misconduct, usually a finding of bad faith or willful misconduct is necessary to support the severest remedies set forth in Rule 37(b)(2)(A). *Id*. "Lesser sanctions do not require a finding of willfulness." *Id*. However, "[f]or a court to impose sanctions under Rule 37(b)…there must be a violation of a discovery order…." *Reyes*, 2016 WL 5871278, at * 2. "A district court's Rule 37(b)(2) sanction order generally must meet two standards: '[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Keybank National Assoc. v. Perkins Rowe Assoc., LLC*, 539 Fed. Appx. 414, 419 (5th Cir. 2013) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

Apart from the Federal Rules of Civil Procedure, "[f]ederal courts have the inherent power to assess sanctions under certain circumstances, such as "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the 'very temple of justice.'" *Matter of Dallas Roadster, Limited*, 846 F.3d 112, 134 (5th Cir. 2017) (citing *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). *See also*, *Moench v. Marquette Transportation Co. Gulf-Inland, LLC*, 838 F.3d 586, 595 (5th Cir. 2016) (same); *In re Proeducation International, Inc.*, 587 F.3d 296, 304 (5th Cir. 2009) ("To support an award of sanctions under its inherent power, '[a] court must make a specific finding that the sanctioned party acted in bad faith.'") (quoting *Matta*, 118 F.3d at 416); *Valley View Rentals, LLC v. Colonial Pipeline Co.*, Civil Action No. 11-688, 2013 WL 12182682, at * 2 (M.D. La. May 28, 2013) ("The court's inherent power to impose sanctions is limited to circumstances where the sanctioned party has acted in bad faith."). In using this inherent power, the court "'must comply with the mandates of due process, both in determining that the requisite bad faith exists

and in assessing fees." *Dallas Roadster*, 846 F.3d at 134 (citing *Sandifer v. Gusman*, 637 Fed. Appx. 117, 121 (5th Cir. 2015) (per curiam) (quoting *Chambers*, 501 U.S. at 50)).

### b. Production of Operation Lifesaver Documents

In their Motion to Compel OLI Documents, Plaintiffs explained that they had scheduled the deposition of Mr. Russel, who at the time of the collision "was the Manager of Public Safety for Union Pacific who had this crossing in his territory"[17] and who was also a certified OLI presenter. Plaintiffs characterized the OLI program as Union Pacific's "primary crossing safety program"[18] and explained that the corporate representative for another party originally named in this suit, Chesapeake, had testified that Mr. Russel had given "OLI presentations to its employees twice, one before and one after this collision" and that these presentations occurred in the Louisiana area.[19] Plaintiffs explained that in conjunction with Mr. Russel's deposition, Plaintiffs issued a duces tecum request which included "production of any OLI documents used by Mr. Russel"[20] and that Union Pacific objected to production of OLI documents based primarily on Union Pacific's assertion that the documents could not be produced because of copyright issues. During the April 25, 2017 hearing, the undersigned found the requested documents were relevant to Plaintiffs' claims of negligent training, instruction, inspection, and reporting and rejected Union Pacific's assertion that the documents could not be produced because of copyright issues. Accordingly, the court granted Plaintiffs' Motion to Compel OLI Documents, and ordered Union Pacific to produce documents responsive to document request numbers 1 through 12.[21] Additionally, because Mr.

---

[17] R. Doc. 134, p. 1.

[18] R. Doc. 134-1, p. 1.

[19] R. Doc. 134-1, p. 2.

[20] R. Doc. 134, p. 1.

[21] R. Doc. 160, p. 15. The undersigned acknowledges that in the Hearing Report and Order, Union Pacific was ordered to produce documents responsive to the document requests set forth in Exhibit A. R. Doc. 160, p. 15. However, it was the court's intent to compel only what Plaintiffs moved for, and as set forth herein, the Amended Notice of Video

Russel's deposition had been cancelled to allow a ruling on the Motion to Compel OLI Documents, the court extended the discovery deadline to allow for Mr. Russel's deposition.[22] Plaintiffs now contend that sanctions are warranted because "Union Pacific produced only the documents Buck Russel claims to currently have in his possession, but the railroad has completely failed to produce the documents that were in effect at the time of this collision as Ordered by the Court."[23]

As an exhibit to its opposition to the instant Motion, Union Pacific has attached the "Amended Notice of Video Deposition Duces Tecum of Buck Russell" and the accompanying "Exhibit A" "Items to be Produced at Deposition."[24] Based on this Amended Notice, it appears that Plaintiffs scheduled the deposition of Mr. Russel and requested that Mr. Russel produce the documents set forth in Exhibit A. The Amended Notice did not request that Union Pacific produce the documents listed in Exhibit A. Plaintiffs' Motion to Compel OLI Documents sought to compel production of documents responsive to the Exhibit A list. Based on his deposition testimony, Mr. Russel apparently produced all OLI documents within his possession, custody, or control.[25] This is what was required of Mr. Russel pursuant to the Federal Rules of Civil Procedure. Fed. R. Civ. P. 34(a)(1) (a party may serve upon any other party a request to produce documents within the responding party's possession, custody, or control); Fed. R. Civ. P. 45(a)(1)(A)(iii) (subpoena may command a person to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."). Accordingly, the undersigned finds there is no basis to impose sanctions pursuant to Fed. R. Civ. P. 37(b). Moreover, Plaintiffs

---

Deposition Duces Tecum and accompanying Exhibit A that was the basis for Plaintiffs' Motion to Compel was directed solely to Mr. Russel.

[22] R. Doc. 160.

[23] R. Doc. 172-1, p. 5.

[24] R. Doc. 186-3.

[25] *See*, R. Doc. 172-12, pp. 22:17-27:25.

have not established that Union Pacific or Mr. Russel acted in bad faith with respect to the production of OLI documents sought via Plaintiffs' Motion to Compel,[26] and therefore there is no basis for this court to exercise its inherent power to impose sanctions. Accordingly, Plaintiffs' motion seeking imposition of sanctions based on Mr. Russel's production of OLI documents is DENIED.

### c. Communications with Crossing Users

Plaintiffs assert that the "Areas of Inquiry" for Union Pacific's April 4, 2016 corporate deposition included "identification of anything your railroad has done to work with…Chesapeake…on safety issues related to the subject crossing" and "identification of all documentation of communications to, from or within your railroad regarding this crossing."[27] Plaintiffs complain that during Union Pacific's corporate deposition, Union Pacific's representative, Mr. Thad Call, testified that Union Pacific's searches did not uncover any communications with any crossing users such as Chesapeake.[28] Plaintiffs explain that following Mr. Call's deposition, Plaintiffs issued a document request seeking "all Lotus notes regarding this crossing, this collision, or USDOT # 755983T, for the past ten years" and thereafter proposed a protocol for searching Union Pacific's electronically stored information ("ESI").

Despite these ongoing efforts throughout the discovery period, Plaintiffs assert that it was not until Mr. Russel's deposition that Plaintiffs discovered "for the first time in this case that prior to the February 16, 2015 collision, Union Pacific employees had communications with crossing users concerning safety at this crossing. In fact, there were at least four prior Operation Lifesaver

---

[26] R. Doc. 134.

[27] R. Doc. 172-1, pp. 1-2.

[28] R. Doc. 172-1, p. 2.

or UP Cares presentations given by a Union Pacific employee, Billy Fuller, to crossing users."[29] Plaintiffs contend that "[t]his is the first time Mr. Fuller's name was mentioned by Union Pacific in a deposition, discovery response or initial disclosure. In addition, Mr. Russel revealed that Chesapeake, a crossing user, contacted him about safety at this crossing. None of these communications were produced and Mr. Russel did not do a domain search to find those or other highly relevant communications."[30] Plaintiffs assert that "Union Pacific concealed evidence of its actual knowledge of the use of the Private Drive Crossing and its communications with crossing users until after discovery was complete" and that such concealment has prejudiced Plaintiffs and warrants sanctions.[31]

As an initial matter, Mr. Call's corporate deposition testimony on behalf of Union Pacific does not appear as cut-and-dried as Plaintiffs assert it is. Mr. Call testified that Union Pacific's legal team "did various searches to try to determine if there were any e-mail communications regarding this private crossing" and that Union Pacific "tried to the best or our ability to make searches for communications that we have document records of."[32] When asked about communications with users of the Crossing, Mr. Call testified that Union Pacific's searches did not uncover any documented communications[33] and that the person most likely to know about any oral communications would be the public safety manager, Mr. Russel.[34] Mr. Call did not take the position that users of the Crossing never had any communications with Union Pacific regarding

---

[29] R. Doc. 172-1, p. 4.

[30] R. Doc. 172-1, pp. 4-5.

[31] R. Doc. 172-1, p. 9.

[32] R. Doc. 172-4, Deposition of Mr. Thadeus Call, p. 38:9-12 & 21-23.

[33] R. Doc. 172-4, p. 39:5-9.

[34] R. Doc. 172-4, p. 24:8-10.

the Crossing.[35]  Following this corporate deposition, Plaintiffs apparently proposed an ESI protocol (which did not include proposed search terms related to potential users of the Crossing such as Chesapeake)[36] and took Chesapeake's corporate deposition on November 1, 2016.[37]  During the November 1, 2106 deposition, Chesapeake's corporate representative testified that Union Pacific, specifically, Mr. Russel along with "multiple people," "did a railroad safety" presentation for Chesapeake twice in the Haynesville Shale area.[38]  Accordingly, to the extent Plaintiffs contend that they were completely unaware of safety presentations with respect to Chesapeake, it appears that such contention is belied by Chesapeake's deposition testimony.

Plaintiffs argue that Mr. Russel's deposition was the first instance Mr. Fuller's name was mentioned and complain that no communications were produced by Union Pacific regarding any safety presentations by Union Pacific to Chesapeake.  However, Plaintiffs have not directed the court to any instance in which such information was explicitly requested and, based on the history of the parties' discovery efforts as set forth in both the Motion to Compel and Union Pacific's opposition, it does not appear that Union Pacific "concealed" such information.[39]  Plaintiff has not

---

[35] R. Doc. 172-4, p. 39:10-14 (answering "no" to the question "is it your position then that Kinder Morgan, Chesapeake and Earthstone have never had any communications with this railroad about any crossing?").

[36] R. Doc. 172-7.  During Mr. Call's deposition, Plaintiffs' counsel explained that he was "trying to determine whether or not this railroad has done a complete search of its e-mail for communications with Kinder Morgan, Chesapeake, Earthstone, about any private crossings that they have over the Union Pacific Railroad's tracks."  R. Doc. 172-4, p. 41:1-5.  In response, Mr. Call deferred to counsel regarding the total extent of searches done and stated he was "aware that searches done about information or communications about the private – the particular private crossing we're talking about today did not turn up any documentation."  R. Doc. 172-4, p. 41:8-11.

[37] *See*, R. Doc. 186-1.

[38] R. Doc. 186-1, pp. 15:10-16:25.

[39] Likewise, Plaintiffs do not assert that provision of such information was ordered by the court.  Accordingly, the undersigned considers Plaintiffs' Motion with respect to sanctions arising out of Mr. Russel's deposition testimony identifying Mr. Fuller as a request for sanctions pursuant only to this court's inherent power.  *See*, *e.g.*, *Valley View*, 2013 WL 12182682, at * 3 ("In the instant motion, defendant moves for sanctions under both Rule 37(b) and the court's inherent power.  In its memorandum in support of the motion, however, defendant relies solely on the court's inherent power as the source of its power to sanction.  Because defendant does not direct the court to a particular discovery order, the court will analyze defendant's motion through its inherent power to sanction.").

provided a basis for this court to find that Union Pacific's assertion that its searches did not reveal any documented communications with crossing users regarding the crossing was false, and as noted above, it does not appear that Plaintiffs requested Union Pacific conduct additional ESI searches for potential crossing users. Further, the undersigned notes that Chesapeake, in response to requests for production, also stated that it did not have any documents responsive to Plaintiffs' request for "[a]ll documentation of communications with any other entity pertaining to the use of this crossing"[40]

Union Pacific argues in opposition to the Motion that "the safety presentations that Plaintiffs now complain about concerned general driver safety at railroad crossings and were not specific to this crossing."[41] It appears that such presentations were at least generally referred to during Chesapeake's corporate deposition. While Plaintiffs could have presumably issued specifically tailored discovery requests to Union Pacific to determine the identity of the "multiple people" who did a "railroad safety" presentation along with Mr. Russel, it was also reasonable for Plaintiffs to ask Mr. Russel about the details of such presentations during Mr. Russel's deposition. Such questioning lead to the identification of Mr. Fuller, and it appears that there has not been any vigorous objection to the deposition of Billy Fuller outside of the discovery period.[42] In light of Plaintiffs' failure to show that Union Pacific acted in bad faith, the undersigned finds that the imposition of sanctions pursuant to this court's inherent power would be improper. Accordingly, Plaintiffs' Motion for sanctions based on Mr. Russel's identification of Mr. Fuller is DENIED.

---

[40] R. Doc. 186-2.

[41] R. Doc. 186, p. 1.

[42] *See*, R. Doc. 186, p. 7 ("Mr. Potroff advised that he would like to depose Mr. Fuller and the undersigned responded that he would recommend that no objection be lodged to the timeliness of same as such would have been fair game had Mr. Russel been deposed on December 13, 2016 as originally scheduled."). *See also*, R. Doc. 171, p. 4 ("the undersigned counsel merely agreed that he would not object to producing Billy Fuller and that the efforts to identify additional communications specific to this crossing would continue.").

However, in light of the identification of Mr. Fuller, the history of discovery efforts leading up to Mr. Russel's deposition, and the lack of any vigorous opposition to the scheduling of Mr. Fuller's deposition outside of the discovery period, the court will extend the fact discovery period in this matter for the limited purpose of allowing Plaintiffs to depose Mr. Fuller.

### d. Residual Issues Raised in Plaintiffs' Supplemental Certification

Per Plaintiffs' Supplemental Certification, Plaintiffs assert that additional corporate depositions of Union Pacific representatives are necessary to address, *inter alia*: (1) "additional communications about this crossing that should have been identified and documents produced as far back as its initial disclosures;" (2) the disclosure of Union Pacific's "own employee who had made several safety presentations to the users of this crossing;" (3) Union Pacific's refusal "to identify the personnel in its real estate department that had this crossing in their territory;" (4) Union Pacific's failure "to identify personnel at Chesapeake and the other oil and gas companies that were users of this crossing" or produce "the safety presentation materials that were provided to these witnesses;" (5) Union Pacific's refusal "to provide a witness who can respond to inquiries as to why this private crossing had no crossing agreement."[43] The majority of these topics appear to relate to the identification of Mr. Fuller. However, it also appears that Plaintiffs continue to contend that they need additional information regarding (1) the personnel in Union Pacific's Real Estate Department that had the Crossing in their territory; and (2) why this Crossing had no crossing agreement.

---

[43] R. Doc. 168, pp. 3-4. Plaintiffs additionally assert an additional corporate deposition of Union Pacific is necessary because "Union Pacific has also refused to provide a witness who can respond to inquiries about corporate policy that appears to include a conscious indifference to the safety of private crossing users" and "Union Pacific has failed to provide a witness who can respond to inquiries about the corporate policy which has obstructed the multi-billion dollar companies in this case from installing low cost warning devices that would have prevented this tragedy." R. Doc. 168, p. 4. Given the argumentative nature of these assertions, and Plaintiffs failure to explain with particularity any specific area of inquiry that was not sufficiently covered by Mr. Russel or Mr. LaPlante with respect to these "topics," the undersigned does not consider these topic areas further.

During the April 25, 2017 hearing, the parties discussed the possibility that Mr. LaPlante's deposition could resolve Plaintiffs' remaining questions regarding crossing agreements. In light of Mr. LaPlante's deposition, the court deferred ruling on Plaintiffs' motion to compel responses to certain discovery requests seeking a list of all crossings with crossing agreements and documentation of Union Pacific's efforts to identify users of this crossing.[44] The court ordered Plaintiffs to file either a Motion to Withdraw the Motion to Compel or a Supplemental Certification "specifically stat[ing] whether Mr. LaPlante testified regarding Union Pacific's efforts to identify users of the Crossing between March 2009 and March 2015 and Union Pacific's efforts to inventory or otherwise keep track of crossings with crossing agreements" by Monday, May 1, 2017.[45] The court explicitly stated that "[f]ailure to timely file the Supplemental Certification may result in denial of Plaintiffs' Motion to Compel with respect to Requests for Production Numbers 67 and 69."[46]

Plaintiffs completed the deposition of Mr. LaPlante on April 27, 2017.[47] However, Plaintiffs did not timely file either a Supplemental Certification or a Motion to Withdraw and, on May 8, 2017, the court denied Plaintiffs' Motion to Compel with respect to the two requests for production at issue.[48] Plaintiffs did not seek relief from that ruling. Plaintiffs do not attach the

---

[44] The Requests for Production at issue were:

> Request for Production No. 67: Please produce all documentation of efforts by Union Pacific to identify users of this crossing between March 2009 and March 2015.
>
> Request for Production No. 69: Please produce the list of all crossings that have an agreement which Union Pacific has in its system, as testified to by Thaddeus Call in his April 7, 2016 deposition (pages 148-49).

[45] R. Doc. 160, p. 13.

[46] R. Doc. 160, p. 13.

[47] R. Doc. 168, p. 2.

[48] R. Doc. 164.

deposition transcript of Mr. LaPlante to their untimely Supplemental Certification, and have not addressed these issues directly in their current Motion.[49] Accordingly, to the extent Plaintiffs' Motion seeks to compel additional discovery related to Requests for Production 67 and 69 that was the previously raised in their March 21, 2017 Motion to Compel, such request is **DENIED**.

### III. Conclusion

For the reasons set forth herein, Plaintiffs' Motion to Compel Discovery and Impose Sanctions[50] is **DENIED**. Plaintiffs are granted a limited extension of the fact discovery deadline through and including October 15, 2017 to depose Billy Fuller.

Signed in Baton Rouge, Louisiana, on September 20, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] Instead, as noted above, Plaintiffs reference the Supplemental Certification and incorporate it "by reference" into their Motion without further explanation. R. Doc. 172-1, p. 5.

[50] R. Doc. 172.