UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL TODD RYDER, ET AL

VERSUS

UNION PACIFIC RAILROAD COMPANY

CIVIL ACTION

15-431-SDD-EWD

## RULING

This matter is before the Court on the *Motion for Partial Summary Judgment on All Other Claims*[1] filed by Defendant, Union Pacific Railroad Company ("Defendant or UP"). Plaintiffs, Michael Todd Ryder, Lori Powell, Nell Theresa Ryder, Herbert Paul Barras, Jr., and Lisa Barras ("Plaintiffs"), have filed an *Opposition*,[2] to which the Defendant filed a *Reply*.[3] Intervenors, Pipeline Construction & Maintenance, Inc., and Zurich North American Insurance Company, ("Intervenors"), also filed an *Opposition*[4] adopting the arguments made by Plaintiffs. For the following reasons, the Court finds that Defendant's motion should be GRANTED.

I. **FACTUAL BACKGROUND**

This lawsuit arose from an automobile and train collision that occurred on February 16, 2015 which resulted in three fatalities.[5] The collision occurred at United States DOT Grade Crossing No. 755983T in De Soto Parish, Louisiana, between a pickup truck driven by John Cameron Watson ("Watson") and a UP train.[6]

---

[1] Rec. Doc. No. 197. Defendant previously filed two *Partial Motions for Summary Judgment* (Rec. Doc. Nos. 84, 170) which the Court addressed in the *Ruling* at Rec. Doc. No. 207.
[2] Rec. Doc. No. 210.
[3] Rec. Doc. No. 220.
[4] Rec. Doc. No. 211.
[5] Rec. Doc. No. 1, p. 5, ¶ 23; p. 6, ¶ 31.
[6] Rec. Doc. No. 1, p. 5, ¶¶ 24, 26, 30.
Document Number: 43495

The crossing at issue intersected Private Drive, a private gravel driveway, leading to a pipeline jobsite.[7] To gain access to the job site, vehicles traveling on Louisiana Highway 5 turn east onto Private Drive.[8] After turning onto Private Drive, there is approximately seventy (70) feet of gravel road on the western side of the railroad tracks and eighty-five (85) feet of gravel road on the eastern side of the tracks, leading to a locked gate providing access to the jobsite.[9] After crossing the tracks, a driver of one of the vehicles would have to stop, get out, and unlock the gate manually before proceeding on to the jobsite.[10]

On the date of the accident, Watson and his two passengers, Michael Todd Ryder, II, and Herbert Paul Barras, III, were returning to the job site after lunch.[11] Watson was the last in line of four vehicles waiting for the gate to be manually unlocked to gain access to the job site.[12] Due to the preceding vehicles, Watson's vehicle did not fit in the eighty-five (85) feet of roadway between the crossing and the jobsite gate.[13] Instead of stopping within the seventy (70) feet of gravel drive available in advance of the crossing, Watson pulled behind the third vehicle in line at the gate, with his vehicle straddling the crossing.[14]

At the same time, a UP train approached the crossing traveling in a southbound direction.[15] UP engineer, Kenneth Charles, sounded the locomotive horn while approaching the crossing to warn the vehicle on the tracks.[16] Despite these warnings,

---

[7] Rec. Doc. No. 1, p. 5, ¶ 26.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at ¶¶ 24-26.
[12] *Id.*
[13] *Id.* at p. 6, ¶ 28.
[14] *Id.*
[15] *Id.*, ¶ 29.
[16] Rec. Doc. No. 170-2, p. 8.
Document Number: 43495

Watson failed to move his vehicle to a position of safety prior to collision. The train struck Watson's vehicle and all three occupants were killed in the accident.[17]

The current *Motion* was filed prior to this Court's *Ruling*[18] dismissing Plaintiffs' claims for failure to install additional warning devices at the subject crossing and inadequate audible warning. In that *Ruling*, the Court found that UP had no duty to install additional warning devices at the crossing because it does not constitute a "dangerous trap" as set forth by Louisiana jurisprudence.[19]

UP now seeks dismissal of all of Plaintiffs' remaining claims. The remaining claims address UP's alleged failure to exercise reasonable care in 1) train operations, 2) crossing maintenance, and 3) providing adequate warning of the oncoming train.[20] Plaintiffs reassert their inadequate warning device/duty to install additional warning device arguments made in their previous *Oppositions*.[21] Plaintiffs do not provide summary judgment evidence for several claims alleged against UP in their *Complaint*.[22] However, the claims on which Plaintiffs argue summary judgment is not proper are discussed below.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[17] Rec. Doc. No. 1, p. 6, ¶ 31.
[18] Rec. Doc. No. 207.
[19] *Id.* at pp. 5-12.
[20] Rec. Doc. No. 1, pp. 6-16.
[21] Rec. Doc. Nos. 179, 187.
[22] Insofar as Plaintiffs fail to address those arguments raised in their complaint in their current *Opposition*, those claims are abandoned. The law is clear that, "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Kennan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002).
Document Number: 43495

of law."[23] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[24] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[25] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[26] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[27]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[28] All reasonable factual inferences are drawn in favor of the nonmoving party.[29] However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[30] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his

---

[23] Fed. R. Civ. P. 56(a).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[25] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F. Supp. 2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).
[26] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[27] *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[28] *Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[29] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[30] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

Document Number: 43495

allegations ... to get to a jury without any "significant probative evidence tending to support the complaint.""["31"]

### B. UP's duty of reasonable care

There is no dispute between the parties that the subject crossing is a private crossing and that UP categorized it as having public characteristics.[32] Louisiana law does not impose any statutory duties on UP concerning private crossings. As such, Louisiana applies a duty-risk analysis to determine whether liability exists under the facts of any railroad crossing accident. "Under this analysis, a plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached."[33] Therefore, a railroad has a general duty of reasonable care to refrain from injuring motorists on private crossings.

### C. UP's duty of reasonable care in train operation

Plaintiffs' *Complaint* alleges that UP breached its duty of reasonable care by failing to instruct its train crews in a multitude of different ways.[34] However, Plaintiffs' *Opposition* concedes that they are not advancing any inadequate training claims.[35] Therefore, Plaintiffs' claims asserting inadequate training are DISMISSED with prejudice.

Plaintiffs' *Complaint* alleges that UP failed to travel at a speed that is not excessive.[36] The record reflects that, immediately prior to impact, UP's train was traveling

---

[31] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. Of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[32] Rec. Doc. No. 197-2, p. 1; Rec. Doc. No. 210-1, p. 1.
[33] *LeJeune v. Union Pac. R.R.*, 97-1843 (La. 4/14/98), 712 So. 2d 491, 494.
[34] Rec. Doc. No. 1, pp. 7-9.
[35] Rec. Doc. No. 210, p. 10, n.6.
[36] Rec. Doc. No. 1, p. 8.
Document Number: 43495

at a speed of 50 or 51 mph on Class IV track with a Federal Railroad Administration speed limit of 60 mph.[37] Plaintiffs advance no legally supported argument that UP had a duty to operate its train at a speed less than the regulatory max speed for this class of track.[38] As Plaintiffs' have failed to submit any countervailing summary judgment evidence to support their claim, it is also DISMISSED with prejudice.[39]

On the remaining claims concerning train operations, Plaintiffs allege that the train crew failed to keep a proper lookout and failed to slow or stop the train to avoid a specific, individual hazard presented at the crossing in question.[40] Specifically, Plaintiffs argue that the vehicles stopped near and on the crossing awaiting the gate to be opened created a specific, individual hazard which could cause an accident to be imminent.[41] Plaintiffs claim that, had the engineer applied the emergency brakes when he first saw the vehicles, the collision could have been avoided or the fatal injuries reduced.[42]

It is well settled in Louisiana jurisprudence that the duty of the train crew "must be determined in light of the duty imposed on motorists regarding railroad crossings."[43] Motorists have "a duty to stop, look and listen when approaching a railroad crossing" and shall only proceed across when it is safe to do so.[44] The Louisiana Supreme Court in *LeJeune v. Union Pacific R.R.*,[45] "recognized that it is well established in our

---

[37] Rec. Doc. No. 197-10, p. 12; Rec. Doc. No. 197-6, p. 11; *See* 49 C.F.R. § 213.9.
[38] Plaintiffs contend that vegetation at and around the crossing gave rise to a duty to reduce train speed. This argument is addressed infra at section D.
[39] Nevertheless, the Court notes that any potential state law claim asserted by Plaintiff that the train should have been traveling at a speed other than within the guidelines set by the FRSA would have been pre-empted. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993).
[40] Rec. Doc. No. 1 at pp. 8-9.
[41] Rec. Doc. No. 210, p. 10.
[42] *Id.* at pp. 10-11.
[43] *LeJeune*, 712 So. 2d at 494.
[44] *Walker v. Marcev*, 427 So. 2d 678, 682 (La. App. 4th Cir. 1983).
[45] 712 So. 2d 491.
Document Number: 43495

jurisprudence that a train crew can presume that vehicles approaching the crossing will obey the law and stop in time to avoid an accident."[46] Louisiana Revised Statute 32:171, which outlines the obligations of motorists when approaching and traversing railroad crossings states in pertinent part:

> A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
> 
> \*\*\*\*
> 
> (5) A stop sign is erected at the approach to a railroad grade crossing.
> 
> B. No person shall stop a motor vehicle upon any railroad crossing.
> 
> \*\*\*\*
> 
> E. At any railroad grade crossing provided with railroad cross buck signs, without automatic, electric, or mechanical signal devices, crossing gates, or a human flagman giving a signal of the approach or passage of a train or other on-track equipment, the driver of a vehicle shall in obedience to the railroad cross buck sign, yield the right of way and slow down to a speed reasonable for the existing conditions and shall stop, if required for safety, at a clearly marked stopped line or, if no line, within fifty feet but not less than fifteen feet from the nearest rail of the railroad and shall not proceed until he or she can do so safely. **If a driver is involved in a collision at a railroad crossing or interferes with the movement of a train or other on-track equipment after driving past the railroad cross buck sign, the collision or interference is prima facie evidence of the driver's failure to yield the right of way.**[47]

The court in *LeJeune* went on to state:

> The train need not slow down at all or attempt to stop upon seeing a vehicle approaching an upcoming crossing. *Theriot v. Texas & New Orleans R.R. Co.*, 220 So.2d 563, 568–69 (La.App. 4th Cir.1969). It is only if a crew member notices that "the driver of the approaching car is oblivious of the on-coming train or for some other reason does not intend to stop" that the train crew becomes responsible for immediately doing everything in its power to avert the collision. *Leger*, 67 So.2d at 780–81; *see also Wheat v. New Orleans & N.E. R.R. Co.*, 245 La. 1099, 1109–11, 163 So.2d 65, 69–70 (1964). In other words, "the train crew can assume drivers will bring their

---

[46] *Holland v. Norton*, 70 F. Supp. 2d 666, 669 (E.D. La. 1999).
[47] La. R.S. 33:171 (emphasis added).
Document Number: 43495

vehicles to a stop ... unless the vehicle's approach is so unusual as to place an ordinarily prudent man on notice the vehicle cannot be brought to a stop in time to avoid a collision." *Thibodeaux v. Carlock,* 392 So.2d 1084, 1086 (La.App. 3d Cir.1980). Thus, the train crew's duty was to do everything in its power to stop the train once a crew member could no longer reasonably believe that LeJeune would be able to stop the ambulance and that a collision was imminent.[48]

In the present case, engineer Charles testified that, (when the vehicles came into view) he was worried that the bumper of the truck on the left side (not Watson's vehicle) was too close to the tracks.[49] He immediately began blowing the horn as soon as the vehicles came into view.[50] His testimony also revealed that, on approach to the subject crossing, he was actively applying the dynamic braking system and engaged the emergency braking system right before impact.[51] Engineer Charles testified that the truck to the right of the tracks (Watson's vehicle) was not on the tracks when he first observed the crossing and it later pulled onto the tracks after he started to blow the horn.[52] Given this undisputed testimony, Watson breached the motorist's statutory duty not to proceed until he was able to completely make it safely across.

The undisputed summary judgment evidence is that the train engineer engaged emergency braking when it became apparent that Watson would not move his vehicle to a position of safety. However, even assuming *arguendo* the train crew had breached this duty, Plaintiffs have submitted no evidence to establish that, had the brakes been applied earlier, the collision could have been avoided.[53] Therefore, Plaintiffs have not

---

[48] *LeJeune,* 712 So. 2d at 495.
[49] Rec. Doc. No. 210-31 pp. 11-12.
[50] *Id.* at p. 11.
[51] *Id.* at p. 13.
[52] *Id.* at pp. 11-12.
[53] See *Rasmusen v. White,* 970 F. Supp. 2d 807, 825 (N.D. Ill. 2013); citing to *Petre v. Norfolk S. Corp.,* 260 F. App'x. 756, 762 (6th Cir. 2007); *Byrne v. CSX Transp., Inc.,* No. 3:09 CV 919, 2011 WL 1584324, at *5, (N.D. Ohio Apr. 26, 2011).
Document Number: 43495

demonstrated a material issue of fact on this claim. The Court grants summary judgment and Plaintiffs' negligent train operations claims are dismissed with prejudice.

### D. UP's duty of reasonable care in crossing maintenance

Plaintiffs' *Complaint* contains a number of allegations that UP breached its duty of reasonable care in failing to inspect and repair unsafe conditions present at the crossing.[54] In opposition to UP's summary judgment motion, Plaintiffs present only two arguments: 1) UP employees charged with inspecting and overseeing the crossing were unqualified, and 2) non-compliant vegetation present at the crossing required trains to slow to 15 mph.[55]

In particular, Plaintiffs argue that, had UP maintenance and way employees been properly trained to inspect the crossing, they would have identified safety hazards which required UP to provide active warnings such as lights and gates.[56] As discussed in the Court's previous *Ruling*, UP was under no duty to install any additional warning devices at the subject crossing than those already present.[57] Therefore, any argument that UP breached some duty to inspect and install additional warning devices has already been adjudicated. Moreover, as discussed earlier, Plaintiffs concede that they are no longer maintaining any of their failure to train claims.[58] Thus, these claims are not before the court. Finally, as UP points out, the FRSA comprehensively covers the maintenance, repair, and inspection of track condition; including the frequency and manner of

---

[54] Rec. Doc. No. 1, pp. 9-12.
[55] As delineated earlier, any allegations contained in Plaintiffs' *Complaint* which are not supported at summary judgment are DISMISSED. The law is clear that, "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Kennan*, 290 F.3d at 262.
[56] Rec. Doc. No. 210, pp. 11-12.
[57] Rec. Doc. No. 207, pp. 11-12.
[58] Rec. Doc. No. 210, p. 10, n.6.
Document Number: 43495

inspection, and those who are qualified to do so.[59] As such, Plaintiffs' state law negligence claims are preempted.[60] Since Plaintiffs have presented no summary judgment evidence that UP was in violation of any federal regulations in regards to inspecting and maintaining the crossing, summary judgment is granted in favor of UP and those claims are dismissed with prejudice.

Next, Plaintiffs argue that UP's internal rules required it to clear vegetation as required by Louisiana law. As discussed in the Court's previous *Ruling*, Louisiana law requires vegetation around **public crossings** to be cleared for a width of 100 feet and a length of 300 feet.[61] The Court previously found hat UP complied with the vegetation clearing requirement, and there were no obstructions in either direction of the crossing.[62] Nevertheless, the only evidence submitted by Plaintiffs that UP had not complied with these requirements consists of google earth images of the crossing[63] and the conclusory opinion testimony of Alan Blackwell that the vegetation was "out of compliance."[64] Considering that the instant crossing was a private crossing, and UP was under no legal duty to comply with the Louisiana statute addressed to public crossings, the Court finds that Plaintiffs have not provided sufficient summary judgment evidence to show that UP breached any duty to further clear vegetation at the crossing in question. As discussed in the previous *Ruling*, the vegetation surrounding the crossing did not force Watson to place himself in a position of peril in order to see the oncoming train before crossing safely and

---

[59] *Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.*, 270 F. Supp. 2d 1183, 1187–88 (C.D. Cal. 2003).
[60] *Id.*
[61] La. R.S. 48:386.1(A) (emphasis added).
[62] Rec. Doc. No. 207, p. 7.
[63] Rec. Doc. No. 210-21.
[64] Rec. Doc. No. 210-33, p. 8.
Document Number: 43495

completely over the tracks. Therefore, Plaintiffs' claim that vegetation at or near the crossing gave rise to a duty to reduce train speed is dismissed with prejudice, and summary judgment is granted in favor of UP on this claim.

### E. UP's duty of reasonable care in providing adequate visual warning

Plaintiffs' final claims pertain to UP's alleged breach of their duty to exercise reasonable care in installing adequate warning devices at the crossing site.[65] The Court has previously ruled that UP was under no further duty to install additional warning devices at the crossing in issue.[66] In the interest of further clarity, the Court will address Plaintiffs' specific arguments that UP breached its duty to exercise reasonable care in: 1) installing a stop sign at the crossing without an engineering survey, and 2) by failing to enter into a private crossing agreement with adjoining landowners, land occupiers, and crossing users.

Plaintiffs argue that UP installed a stop sign at the subject crossing in violation of the Manual on Uniform Traffic Control Devices ("MUTCD"). The MUTCD requires an engineering study to be conducted prior to the installation of a stop sign at passive crossings.[67] Plaintiffs argue that, had UP conducted an engineering study, it would have required some type of active warning, other than a stop sign, to be installed. Additionally, Plaintiffs argue that, by installing the stop sign, UP assumed the duty to provide the appropriate warning device(s) and did so negligently by installing the incorrect device. Finally, Plaintiffs argue that UP had a duty to enter into a crossing agreement with the crossing users.

---

[65] Rec. Doc. No. 1, pp. 12-16.
[66] Rec. Doc. No. 207.
[67] Rec. Doc. No. 210-34 p. 9.
Document Number: 43495

In both instances, Plaintiffs fail to cite to any authority that places a duty on UP to conduct an engineering study before installing a stop sign or to enter into a crossing agreement at private crossings. As previously held, UP met the requirements for adequate warning devices at the subject crossing. Moreover, Plaintiffs have failed to provide any summary judgment evidence demonstrating how the addition of a stop sign caused the accident.[68] Finally, Plaintiffs contend that UP should have entered into a private crossing agreement with adjoining landowners, land occupiers, and crossing users. Plaintiffs conclude that any crossing agreement would have included additional warning devices at the crossing in question. However, Plaintiffs provide no summary judgment evidence to support this conclusory assertion. UP had no legal duty to install additional warning devices at this private crossing. As such, Plaintiffs remaining claims alleging UP breached it duty to exercise reasonable care in installing appropriate warning devices at the crossing are dismissed with prejudice.

---

[68] Plaintiffs submit a graph depicting that more accidents occur at crossings with Stop signs than at crossings with only cross buck signs. However, this evidence fails to demonstrate how the stop sign at this crossing caused or contributed to the accident in this case. Correlation does not equate to causation. Rec. Doc. No. 210, p. 8.
Document Number: 43495

## III.  CONCLUSION

For the reasons set forth above, Defendant's *Motion for Partial Summary Judgment on All Other Claims*[69] is GRANTED. This matter is Dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 19, 2018.

*Shelly D. Dick*

JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[69] Rec. Doc. No. 197.
Document Number: 43495